IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEVIN S. BEATTY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **OHIOVILLE BOROUGH, JOHN** | ) | 2:14cv67 |
| **SZATKIEWICZ, MARK SMILEK,** | ) | **Electronic Filing** |
| **PAUL STEFF, KARL ANTHONY,** | ) | |
| **RICHARD DECKER, ROBERT WARD,** | ) | |
| **DENISE COX, ROBERT OURS,** and | ) | |
| **KENNETH DOUGHTY,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

March 18, 2016

    **I.**    **INTRODUCTION**

Presently before the Court is the June 5, 2015 motion for summary judgment (ECF No. 58) and the August 14, 2015 motion for sanctions (ECF No. 70) filed, pursuant to Federal Rules of Civil Procedure 56(a) and 37(b), respectively, by Ohioville Borough ("Borough"), John Szatkiewicz ("Mayor Szatkiewicz"), Mark Smilek ("Chief Smilek"), Paul Steff ("Solicitor Steff"), Karl Anthony ("Mayor Anthony"), Richard Decker ("Councilman Decker"), Robert Ward ("Councilman Ward"), Denise Cox ("Councilwoman Cox"), Robert Ours ("Councilman Ours"), and Kenneth Doughty ("Councilman Doughty") (collectively, "Defendants"). Defendants seek judgment as a matter of law with respect to all claims[1] stated in the July 25,

---

[1] In his brief in opposition to Defendants' motion for summary judgment (ECF No. 72), Plaintiff abandons his Fourteenth Amendment claim at Count III of his second amended complaint (ECF

2014 second amended complaint (ECF No. 21) filed by Nevin S. Beatty ("Plaintiff"). This Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). After careful consideration of the motions, the memoranda of the parties, and the entire record, the Court will grant Defendants' motion for summary judgment, and deny Defendants' motion for sanctions.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On July 9, 2009, Plaintiff began his employment with the Borough as a probationary, part-time police officer. (ECF Nos. 61 at ¶ 1; 73 at ¶ 1). Upon completion of his probationary period, Plaintiff was elevated to the position of a regular, part-time police officer. (ECF Nos. 61 at ¶ 4; 73 at ¶ 4). While employed in this position, Plaintiff was approached by Borough Secretary Maureen Hapach in July 2012. (ECF Nos. 61 at ¶ 7; 73 at ¶ 7). Ms. Hapach informed Plaintiff that she had reason to believe that then-Police Chief Ronald Lutton had been submitting falsified payroll records to the Borough. (ECF Nos. 61 at ¶ 6; 73 at ¶ 6). Plaintiff reviewed the payroll records, and informed Ms. Hapach that he would contact the District Attorney of Beaver County, Pennsylvania, as well as the Pennsylvania State Police, because he did not believe it appropriate for him or the Borough police department to conduct a full investigation of the police chief. (ECF Nos. 61 at ¶¶ 10, 13; 73 at ¶¶ 10, 13).

On August 21, 2012, Plaintiff contacted the District Attorney of Beaver County and Pennsylvania State Police regarding the information provided to him by Ms. Hapach. (ECF Nos. 61 at ¶ 14; 73 at ¶¶ 14, 129; 76 at ¶ 129). Ms. Hapach was subsequently contacted by the

---

No. 21). *See* FACTUAL AND PROCEDURAL BACKGROUND, *infra*, at 6. In light of the abandonment, the Court will dismiss that claim.

2

Pennsylvania State Police, at which point she provided the payroll documents to Pennsylvania State Trooper Joseph O'Layer. (ECF Nos. 61 at ¶¶ 19 – 20; 73 at ¶¶ 19 – 20, 132 – 33; 76 at ¶¶ 132 – 33). The week following his contact with the Pennsylvania State Police, Plaintiff informed Councilman Decker, Councilman Ward, Councilman Doughty, then-Assistant Police Chief Smilek, and Solicitor Steff of his actions regarding the payroll records. (ECF Nos. 61 at ¶¶ 22 – 24; 73 at ¶¶ 22 – 24). Solicitor Steff did not agree with Plaintiff's decision to refer the matter to outside authorities. (ECF Nos. 16 at ¶ 24; 73 at ¶ 24). Nonetheless, Borough council suspended Mr. Lutton, and promoted Smilek to acting chief of police. (ECF Nos. 61 at ¶ 25; 73 at ¶ 25).

Councilman Doughty expressed gratitude for Plaintiff's initiation of an investigation into the payroll records. (ECF Nos. 73 at ¶ 119; 76 at ¶ 119). Councilmen Doughty, Decker, and Ward also requested that Plaintiff conduct his own, separate investigation of the payroll issue. (ECF Nos. 73 at ¶¶ 135 – 37; 76 at ¶¶ 135 – 37). Plaintiff spent several weeks conducting his investigation, and reviewed all documentary evidence available. (ECF Nos. 73 at ¶ 136; 76 at ¶ 136). Plaintiff never produced a formal, written report of the results of his efforts. (*Id.*). He did, however, relay his findings to Councilman Decker. (ECF No. 59-16 at 32).

On January 16, 2014, Plaintiff filed a complaint (ECF No. 1) in this Court, pursuant to 42 U.S.C. § 1983, against the Borough, Mayor Szatkiewicz, and Chief Smilek. Plaintiff claimed that he had been denied adequate notice and an opportunity to be heard regarding various suspensions from duty and other disciplinary actions taken against him since his report of Mr. Lutton's conduct, in violation of the Fourteenth Amendment. Plaintiff amended this complaint on February 5, 2014 (ECF No. 5), in order to add a count against the Borough, Mayor Szatkiewicz, and Chief Smilek for retaliation in violation of the First Amendment.

Mayor Anthony replaced Mayor Szatkiewicz on January 1, 2014. (ECF Nos. 61 at ¶ 109; 73 at ¶ 109). In March 2014, Mayor Anthony recommended that Borough Council indefinitely suspend Plaintiff based upon numerous alleged lapses in performance resulting in recent suspensions from duty. (*Id.*). There was no evidence in Plaintiff's personnel filed that indicated Plaintiff had been reprimanded or disciplined prior to reporting Mr. Lutton. (ECF No. 73 at ¶ 138). Nonetheless, Borough Council ultimately followed Mayor Anthony's recommendation of indefinite suspension. (ECF Nos. 61 at ¶ 109; 73 at ¶ 109). Ms. Hapach left her position with the Borough as both Secretary and Treasurer on April 25, 2014. (ECF Nos. 61 at ¶ 72; 73 at ¶ 72).

Plaintiff filed a second amended complaint (ECF No. 21) on July 25, 2014, adding several parties as Defendants, and including another count for retaliation in violation of the First Amendment as it related to his right to access the courts. Following a period of discovery, Defendants filed the present motion for summary judgment (ECF No. 58) on June 5, 2015. Defendants also filed a motion for sanctions (ECF No. 70) on August 14, 2015. In his opposition to Defendants' motion for summary judgment, Plaintiff abandoned his Fourteenth Amendment claim at Count III of his second amended complaint. (ECF No. 72 at 16). The remaining issues have been fully briefed (ECF Nos. 59 – 61, 71 – 72, 74 – 76), and are ripe for disposition.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex*

4

*Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*. 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e, depositions, answers to interrogatories, and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.2d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F.App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

## IV. DISCUSSION

### A. *First Amendment Retaliation – Freedom of Speech*

At Count I of Plaintiff's second amended complaint, it is argued that Plaintiff was subjected to several disciplinary actions – and ultimately termination – solely as a result of reporting Mr. Lutton's potential falsification of Borough payroll records to the District Attorney of Beaver County and Pennsylvania State Police. (ECF No. 21 at 9 – 10). In their present motion for summary judgment, Defendants counter by arguing that not only is there no evidence to connect Plaintiff's discipline and termination to his report of Mr. Lutton's conduct, but that even if there had been retaliation, Plaintiff's conduct was not shielded by the First Amendment. (ECF No. 59 at 8 – 13).

It is well-established that a government employer "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 465 (3d Cir. 2014) (quoting *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). The unencumbered debate of issues of public importance is a core value of First Amendment jurisprudence. *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)). Public employees do not completely surrender their First Amendment rights as a function of government employment. *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). However, public employers are still employers, and the government's need to monitor and evaluate the efficiency and effectiveness of its employees – as any other employer – necessitates certain limitations upon an employee's freedom. *Id.* at 465 – 466 (citing *Garcetti*, 547 U.S. at 418; *Miller v. Clinton Cnty.*, 544 F.3d 542, 547 (3d Cir. 2008)).

Thus, a First Amendment retaliation claim requires proof that: (1) an employee engaged in speech protected by the First Amendment; and (2) the employee's speech was a substantial or

6

motivating factor in alleged retaliatory action. *Munroe*, 805 F.3d at 466 (3d Cir. 2014) (citing *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)). "The first factor is a question of law; the second factor is a question of fact." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). If these factors are established, the burden shifts to the government employer to prove that the same action would have been taken irrespective of the employee's speech. *Munroe*, 805 F.3d at 466.

With respect to the first factor, an employee's speech is protected by the First Amendment if: (1) the employee spoke as a citizen, and not as an employee, (2) "the speech involved a matter of public concern," and (3) "the government lacked 'adequate justification' for treating the employee differently than it would a member of the general public." *Munroe*, 805 F.3d at 466 (quoting *Dougherty*, 772 F.3d at 987). These three inquiries are threshold considerations. *Fulmer v. Pa.*, 2011 WL 915846 at * 6 (W.D. Pa. Mar.16, 2011) (citing *Hill*, 455 F.3d at 241). The Court will first look to whether Plaintiff spoke as a citizen, as opposed to as an employee. The parties' central dispute, here, turns upon whether or not the act of reporting Mr. Lutton's conduct to the District Attorney of Beaver County and Pennsylvania State Police may properly be considered one of Plaintiff's duties as a Borough police officer.

The Supreme Court of the United States has held that public employees speaking "pursuant to their official duties," do not receive First Amendment protection. *Dougherty*, 772 F.3d at 987 (quoting *Garcetti*, 547 U.S. at 421). If a public employee's conduct constitutes nothing more than one of his or her "daily professional duties," then it is distinguishable for First Amendment purposes, because it is not "the kind of activity engaged in by citizens who do not work for the government." *Id.* at 988 (quoting *Garcetti*, 547 U.S. at 422). What may be considered speech pursuant to official duty is a practical inquiry based upon the circumstances of

7

one's employment. *Id.* It is a mixed question of law and fact. *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007) *abrogated on other grounds by Borough of Duryea, Pa. et al. v. Guarnieri*, 564 U.S. 379, 131 S.Ct. 2488 (2011)). To this end, the Third Circuit Court of Appeals frequently looks to whether a government employee was required to take their speech up the chain of command, whether speech was related to special knowledge or experience gained through routine or *de facto* job duties, whether the speech was within the employee's designated responsibilities, or whether the employee's speech was made in furtherance of his or her designated duties, even if the speech was not a part of said duties. *Dougherty*, 772 F.3d at 988; *Kimmet v. Corbett*, 554 F.App'x 106, 111 (3d Cir. 2014).

Presently, the facts of record demonstrate that it was Ms. Hapach who discovered Mr. Lutton's payroll irregularities. (ECF No. 59-17 at 26 – 27). She had suspected for some time that Mr. Lutton – the then-chief of police – was engaged in criminal activity. (ECF No. 59-17 at 27, 30, 34). Ms. Hapach knew Plaintiff as a police officer for the Borough, and her experience working with him left the impression that he conducted himself in that role "by the book." (*Id.*). Consequently, Ms. Hapach reached out to Plaintiff during one of his work shifts. (*Id.*). Ms. Hapach trusted Plaintiff to take charge of the matter in his professional capacity as a police officer. (ECF No. 59-17 at 28, 30). Ms. Hapach did not report the information to any outside parties, and believed that Plaintiff would take the issue up the chain of command to Borough Council. (ECF No. 59-17 at 30 – 31).

However, Plaintiff did not immediately inform his superiors about Mr. Lutton. Plaintiff reviewed the payroll documents with Ms. Hapach and determined – in his professional judgment – that there was probable cause to charge Mr. Lutton with a crime. (ECF No. 59-16 at 24 – 27). Yet, he did not believe that he could continue to investigate the matter personally due to a

potential conflict of interest. (ECF No. 59-16 at 27). As such, he forwarded the matter onto other local law enforcement agencies. (*Id.*). He then reported his actions to a few of his superiors. Plaintiff did not contact any other parties, or the press.

Plaintiff argues that the above chain of events evidences that when reporting Mr. Lutton's potentially criminal behavior to the District Attorney of Beaver County and Pennsylvania State Police, he was exercising his First Amendment right to speech as a citizen. In support, Plaintiff notes that he did not at first report Ms. Hapach's concerns up the chain of command, he did not conduct an investigation due to a lack of express authority and a conflict of interest, and he referred the matter to outside agencies with which the Borough police department had no relevant history of cooperation. (ECF No. 72 at 3 – 11). As to Plaintiff's first point, the evidence clearly shows that Plaintiff did not initially report to his superiors before contacting the District Attorney of Beaver County and Pennsylvania State Police. In light of the sensitive nature of the issue, the Court can appreciate why Plaintiff did not go up the chain of command before initiating the investigation. This is only one of several factors that the Court must consider when determining whether Plaintiff acted as a citizen or as an employee. *Kimmet*, 554 F.App'x at 111. The most critical question for this Court is "'whether the speech at issue is itself *ordinarily* within the scope of an employee's duties.'" *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 178 (3d Cir. 2015) (quoting *Lane v. Franks*, 134 S.Ct. 2369, 2379 (2014)).

With respect to Plaintiff's contention that no investigation occurred pursuant to Plaintiff's routine duties, the Court finds the evidence of record to dictate otherwise. As an initial matter, the Borough's Police Department Policy and Procedure Manual states that "[i]t shall be the duty of every Police Officer to see to the enforcement of all criminal and traffic laws of the Commonwealth of Pennsylvania, and all the Ordinances of the Borough of Ohioville, and

9

to preserve order and prevent violations of the law, and to arrest violators thereof." (ECF No. 74-14 at 3). Despite Plaintiff's assertion to the contrary, there is no evidence of a requirement that Plaintiff obtain permission from his superiors prior to investigating a direct report of criminal activity. Even the section of the police manual regarding probationary police officers makes no mention of such a requirement. (ECF No. 59-4 at 16).

Indeed, during deposition testimony, Plaintiff explained that when Solicitor Steff questioned the propriety of Plaintiff's decision to contact the District Attorney of Beaver County and Pennsylvania State Police, Plaintiff's response was that: "I said that it was my call. I told him that it was my call because I'm the one with the ability to enforce the laws." (ECF No. 59-16 at 39). Further, when questioned about why Plaintiff had not reported to any Borough officials – such as the mayor – prior to contacting outside agencies about Mr. Lutton's conduct, Plaintiff testified that he decided not to because "[i]t was an investigation that was being initiated." (ECF No. 59-16 at 26). "Normally we wouldn't communicate with anyone, such as the mayor, about an investigation." (*Id.*).

This evidence – even when viewed in the light most favorable to Plaintiff – points to the initiation of a criminal investigation pursuant to Plaintiff's duties as a police officer. Even if declining to go up the chain of command prior to initiating the investigation was not typical[2] of

---

[2] To the extent Plaintiff claims that there is no history of Borough police working with outside agencies to investigate matters of corruption in local government, it strains credulity to believe that Borough police do not work with the District Attorney of Beaver County or Pennsylvania State Police as a function of their duties. The evidence of record shows that Plaintiff is aware of at least one instance during his tenure in which the Borough police department was asked to work with the District Attorney of Beaver County with respect to a criminal investigation. (ECF Nos. 61 at ¶¶ 61 – 63; 73 at ¶¶ 61 – 63). Plaintiff's assertion, here, is not sufficient to demonstrate that by requesting the assistance of the District Attorney of Beaver County and Pennsylvania State Police, Plaintiff was engaging in speech as a 'citizen.'

Plaintiff's daily duties, the facts show that Plaintiff's actions fell in line with his general responsibilities as a Borough police officer – to enforce the laws and address crime. *See Fulmer*, 2011 WL 915846 at * 8 (More general responsibilities are not beyond the scope of official duties for First Amendment purposes.). Moreover, the utilization of external assistance (i.e. the District Attorney of Beaver County and Pennsylvania State Police), while perhaps beyond the expectations of Plaintiff's formal job description, does not place such action beyond the scope of Plaintiff's duties. *Foraker*, 501 F.3d at 242 (citing *Garcetti*, 547 U.S. at 424 – 25).

Inasmuch as Plaintiff cites a conflict of interest as a reason that an investigation did not – and could not – occur, Plaintiff provides no explanation for the implication that a conflict of interest assessment cannot be a part of the investigatory process or be conducted pursuant to a law enforcement officer's duties. Plaintiff's own deposition testimony indicates that even the Pennsylvania State Police reassigned the investigation of Mr. Lutton's case to multiple officers due to potential conflicts of interest. (ECF No. 59-16 at 30). A transfer of an investigation from one law enforcement agency to another due to a conflict of interest does not convert the initial investigation into speech by a citizen. Indeed, such action suggests that Plaintiff's speech was made in furtherance of his law enforcement duties, even if he believes such speech was not an explicit aspect of his duties. *Kimmet*, 554 F.App'x at 111 (citing *Foraker*, 501 F.3d at 243).

What the evidence of record shows is that Ms. Hapach contacted Plaintiff in his professional capacity as a police officer[3] to report a possible ongoing crime. Plaintiff reviewed the payroll documents presented to him, and his professional judgment and experience brought him to the conclusion that probable cause existed to charge Mr. Lutton with a crime. Plaintiff then determined that his investigation of a superior could present a conflict of interest and give

---

[3] Plaintiff and Ms. Hapach were not friends at this point in time. (ECF No. 59-16 at 23).

others the impression that the investigation was biased. Plaintiff, therefore, took the matter directly to the District Attorney of Beaver County and Pennsylvania State Police in furtherance of the investigation he initiated when he reviewed the payroll records with Ms. Hapach.

The above conduct clearly illustrates that Plaintiff relied on knowledge and experience accumulated as a police officer and employee of the Borough to conclude that a crime had likely been committed, that he could not continue to investigate it, and that in order for the criminal investigation to continue, he would need to contact other law enforcement agencies. Viewed in the light most favorable to Plaintiff, the evidence of record and deposition testimony demonstrate that: (1) Plaintiff's speech (i.e. reporting the crime to the District Attorney of Beaver County and Pennsylvania State Police) related to his specialized knowledge and experience as a police officer and Borough employee; (2) Plaintiff's duties as a police officer included investigating all criminal laws of the Commonwealth of Pennsylvania (i.e. Mr. Lutton's conduct); and (3) that due to the perceived conflict of interest, Plaintiff's speech to the District Attorney of Beaver County and Pennsylvania State Police was made in furtherance of his duty to address criminal activity brought to his attention in his capacity as a police officer.

The Court, therefore, holds that Plaintiff's speech was not made as a citizen, but pursuant to, and in furtherance of, his duties as a police officer. There is no need to go through the remaining factors for determining whether or not Plaintiff's speech was protected by the First Amendment. *Foraker*, 501 F.3d at 243. Incidentally, the Court is compelled to note that the exposure of abusive or criminal activity by a government official, such as that committed by Mr. Lutton, is of considerable significance; however, the Supreme Court has stated that there is not a "constitutional cause of action behind every statement a public employee makes in the course of doing his or her job." *Garcetti*, 547 U.S. at 425 – 26. The Court must, therefore, grant summary

judgment in favor of Defendants with respect to Count I of Plaintiff's second amended complaint.

### B. *First Amendment Retaliation – Right of Access to Courts*

At Count II of Plaintiff's second amended complaint, it is argued that Plaintiff suffered retaliation in the way of adverse employment actions – and eventual termination – by Defendants in response to his filing of his initial and first amended complaints. (ECF No. 21 at 10 – 11). In their motion for summary judgment, Defendants reply by arguing that because Plaintiff was speaking as a public employee, he was not entitled to First Amendment protection. (ECF No. 59 at 8 – 13).

The Supreme Court of the United States has found that "when a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." *Guarnieri*, 131 S.Ct. at 2493 (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). As this Court has already determined that Plaintiff did not speak as a citizen, but as a public employee pursuant to, and in furtherance of, his duties as a police officer, summary judgment must be granted in favor of Defendants at Count II of Plaintiff's second amended complaint.

### C. *Motion for Sanctions*

Defendants seek sanctions against Plaintiff due to the alleged violation of this Court's May 29, 2015 order (ECF No. 56) granting Defendants' motion to compel supplemental disclosures (ECF No. 51). The Court originally ordered that copies of all texts and emails between Plaintiff and Ms. Hapach from January 1, 2012 through the date of the order be provided to Defendants. The Court also ordered that Plaintiff's phone and personal computer be made available for forensic examination and review of all texts and emails between Plaintiff and

Ms. Hapach from January 1, 2012 though the date of the order. Defendants claim that neither of this Court's directives was followed by Plaintiff. Defendants ask this court to compel Plaintiff to comply with the May 29, 2015 order, and reimburse Defendants for any costs associated with searching Plaintiff's phone and personal computer. In light of the Court's decision to grant summary judgment in favor of Defendants as to all remaining claims at Counts I and II of Plaintiff's second amended complaint, Defendants' motion for sanctions will be dismissed as moot.

V.     CONCLUSION

Based upon the forgoing, and viewing all record evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated that he was speaking as a citizen when he initiated the investigation of criminal activity by his former police chief, Mr. Lutton, with the District Attorney of Beaver County and Pennsylvania State Police. Accordingly, Defendants' motion for summary judgment will be GRANTED, and Defendants' motion for sanctions will be DENIED. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc.     Jonathan M. Gesk
Joel S. Sansone
Bernard P. Matthews, Jr.
Erica L. Laughlin

(*Via CM/ECF Electronic Mail*)